MOORE, Judge.
Valerie Smith appeals from a summary judgment entered by the Jefferson Circuit Court .(“the trial court”) in favor of Wells Fargo Bank, NA (“Wells Fargo”), on Smith’s claims. We reverse the trial court’s judgment and remand the case.
Procedural History
On February 13, 2015, Smith filed a complaint against Wells Fargo and a number of fictitiously named defendants, alleging, among other things, that, on March 12, 2013, she had visited the Wells Fargo branch in East Lake in Birmingham; that an employee of Wells Fargo had instructed Smith to sit in a chair; and that the chair had collapsed, causing Smith to be injured. Smith asserted claims of negligence; wantonness; failure to maintain the premises in a safe condition; failure to warn; negligent and wanton hiring, training, and supervision; and respondeat superior. Wells Fargo answered the complaint on March 10, 2015. On January 26, 2016, Wells Fargo filed a motion for a summary judgment, arguing that it was entitled to a summary judgment because the seating capacity of the chair constituted an open and obvious danger to Smith in relation to her size and that Wells Fargo had had no knowledge that the chair would constitute a danger *993 ous condition on its premises. Smith filed a memorandum in opposition to Wells Fargo’s summary-judgment motion on February 26, 2016. On February 29, 2016, Wells Fargo filed an evidentiary submission in support of its summary-judgment motion, attaching thereto photographs as exhibits to one of the depositions that had been included as part of its original submission. Smith filed a response to that evidentiary submission on March 2, 2016, in which she, among other things, moved to strike from the record each of those photographs as not having been properly authenticated. On March 9, 2016, the trial court entered an order granting Wells Fargo’s motion for a summary judgment as to all the counts in Smith’s complaint. Smith filed her notice of appeal to the Alabama Supreme Court on April 20, 2016; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1976.
Facts
Wells Fargo attached to its summary-judgment motion, among other things, excerpts of the transcript of Smith’s deposition testimony. In that deposition, Smith testified that she was 33 years old and that, on the day of the incident, she had gone to the bank with her mother so that her mother could have a document notarized. According to Smith, when the branch manager learned that she did not have an account at Wells Fargo, he told her and her mother to come into his office and Smith and her mother complied with that request. Smith stated that she went to sit down in a chair that was positioned in the manager’s office to the left, that she could not really maneuver because she is “a heavy person,” and that she “would never just flop down in a chair,” but she had not even had a chance to put her weight or her rear into the chair when it made a loud, cracking noise, fell apart, and collapsed. She stated that she had tried to catch herself but had been unable to and that she had hurt her knee and her back in the resulting fall. Smith confirmed that she had not put any weight onfo the chair and that it had fallen apart once she had put her hand on it. She stated that she has wide hips so she could not sit back in the chair. According to Smith, when she sits she does so gently, and, she said, she was surprised when the chair collapsed. She stated that the branch manager had seemed very surprised and shocked when the chair collapsed. Smith testified that, because she has wide hips, she tries not to sit all the way back onto any chair, especially chairs with armrests, and that, when she does, she is very careful. She stated that, before she attempted to sit on the chair in question, she had had no concerns and that the chair had seemed stable enough to her.
Wells Fargo also attached to its summary-judgment motion excerpts from the transcript of Patricia Crenshaw’s deposition testimony. Crenshaw, Smith’s mother, testified that she had visited the branch at East Lake maybe 10 times before the incident and that she had never seen anyone have problems with a fall or chairs breaking or heard of such an incident. She testified that nobody had said anything about the chair after the fall and that the branch manager had been as surprised as she and Smith after the fall.
In its response to Smith’s request for production of documents, Wells Fargo asserted that it was not aware of any instances of the subject chair or any chairs collapsing before Smith’s accident. Smith attached a copy of the entirety of the transcript of her depositión testimony to her response to Wells Fargo’s summary-judgment motion. Smith also testified that she had never heard of anybody else being injured at the bank as the result of a chair disassembling. Smith also submitted her affidavit, in which she stated that, before the chair collapsed, the bank’s branch *994 manager had instructed her to sit down in one of the bank’s chairs. She testified that she had never had a chair collapse out from under her before.
Standard of Review?'
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala. 1992).
“‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving ■ party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that, burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw ¿11 reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the non-moving party must present “substan-. tial evidence” creating a genuine issue of material fact—“evidence of such weight and quality that fair-minded' persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala, Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004).”
Chancellor v. White, 34 So.3d 1270, 1273 (Ala. Civ. App. 2008).
Analysis
Smith first argues on appeal that she was an invitee of Wells Fargo at the time of her injury and that the trial court therefore erred in entering a summary judgment in favor of Wells Fargo because, she says, Wells Fargo denied in its summary-judgment motion that Smith was an invitee of the bank. Smith argues that whether a plaintiff is a licensee or an invitee is a question for a jury and, thus, that the entry of a summary judgment was inappropriate. We note that, in its summary-judgment motion, Wells Fargo stated; in pertinent part: “[Wells Fargo], for purposes of its legal argument, will assume that [Smith] was an invitee on the. day of her accident, but [Wells Fargo] does not concede this point.” Wells Fargo proceeded to analyze Smith’s claims as though Smith was an invitee of the bank. Accordingly, the trial court’s granting of Wells Fargo’s motion for a summary judgment did not amount to a finding by the trial court that Smith was not an invitee of the bank. Rather, Wells Fargo proceeded in its summary-judgment motion as though Smith had been an invitee of the bank, and the trial court concluded that, assuming Smith was an invitee, Wells Fargo was still entitled to a summary judgment:' Becahse Smith has' failed to show that the trial court erred on this point, we decline to address whether Smith was properly considered an invitee of Wells Fargo, and, instead, we proceéd, as Wells Fargo did in its summary-judgment motion, as though Smith was ah invitee of the bank.'
Smith next argues that the trial court erred in entering a summary judgment in favor of Wells Fargo because, she says, whether the danger was open and obvious and whether Wells Fargo had actual or constructive knowledge that the chair .was defective were questions for a jury. We agree. ■
*995 In its summary-judgment motion, Wells Fargo argued, among other things, that Smith “recognized and anticipated the open and obvious danger posed by the chair’s size in relation to hers” and that it cannot be liable for injuries to an invitee, such as Smith, “when the danger should have been perceived in the exercise of reasonable care.”
“‘A condition is “open and obvious” when it is “known to the [plaintiff] or should have been observed by the [plaintiff] in the exercise of reasonable care.” Quillen v. Quillen, 388 So.2d 985, 989 (Ala. 1980). “The entire basis of [a store owner’s] liability rests upon [its] superi- or knowledge of the danger' which causes the [customer’s] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot' be held liable.” Id. (citation omitted).’ ”
Horne v. Gregerson’s Foods, Inc., 849 So.2d 173, 176 (Ala. Civ. App. 2002) (quoting Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala. 2002)).
In this case, Smith testified in her deposition that she is a heavy person and' that she has wide hips and tries not to sit all the way back into any chair, especially a chair with armrests. Smith also stated, however, that she had not put her weight on, or her rear into, the chair before it collapsed and that the chair had fallen apart once she put her 'hand onto it. Smith testified that the chair had seemed stable to her before she attempted to sit in it and that she had been surprised when the chair collapsed, as was the bank’s branch manager. Our supreme court has observed that
“ ‘[questions of openness and obviousness of a defect or danger and of an [invitee’s] knowledge are generally not to be resolved on a motion for summary judgment.’ Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala. 1993). See also Woodward[ v. Health Care Auth. of Huntsville, 727 So.2d 814 (Ala. Civ. App. 1998) ]. Additionally, ‘this Court has indicated that even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect.’ Young v. La Quinta Inns, Inc., 682 So.2d 402, 404 (Ala. 1996).” '
Ex parte Kraatz, 775 So.2d 801, 804 (Ala. 2000). Viewing the evidence in a light most favorable to Smith, as we must, we conclude that genuine issues of material fact remain as to whether the danger presented in the present case was open and obvious and whether Smith appreciated the danger of any defect. Accordingly, the entry of a summary judgment was inappropriate with regard- to Wells Fargo’s argument that the chair presented an open and obvious danger.
Wells Fargo also argued in its summary-judgment'motion that it lacked superior knowledge of the danger presented by the chair. In Hale v. Kroger Limited Partnership I, 28 S.o.3d 772, 778-79 (Ala. Civ. App. 2009), this court stated, in pertinent part:
“ ‘A premises owner owes his, invitees a duty to keep the premises in a reasonably safe condition and to warn them of any “defects and dangers that are known to the landowner but are unknown or hidden to the invitee[s].” Prentiss v. Evergreen Presbyterian Church, 644 So.2d [475] at 477 [(Ala. 1994) ] (emphasis added); and Howard v. Andy’s Store for Men, 757 So.2d 1208, 1210 (Ala. Civ. App. 2000). A premises owner, however, owes no duty to.protect invitees from all conceivable dangers they might face while on the premises because “ ‘[t]he owner of a premises ... is not an insurer of the safety of his invitees *996 ... and the principie of res ipsa loqui-tur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee.’ ” Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 314 (Ala. 2000) (quoting Tice v. Tice, 361 So.2d [1051] at 1052 [ (Ala. 1978) ]). See also Kmart Corp. v. Bassett, 769 So.2d 282, 286 n. 4 (Ala. 2000) (holding that the principle of res ipsa loquitur does not apply to premises-liability claims).
“ ‘Instead, “ ‘[t]he entire basis of an invitor’s liability rests upon his superi- or knowledge of the danger which causes the invitee’s injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.’ ” Jones Food Co. v. Shipman, 981 So.2d 355, 363 (Ala. 2006) (quoting Quillen v. Quillen, 388 So.2d 985, 989 (Ala. 1980)). See also Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala. 2002); and Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937).’
“Edwards v. Intergraph Servs. Co., 4 So.3d 495, 503 (Ala. Civ. App. 2008).
“In Winn-Dixie Store No. 1501 v. Brown, 394 So.2d 49 (Ala. Civ. App. 1981), this court stated:
‘“As the burdén of showing negligence rests with the plaintiff, it is necessary to prove: (a) that the foreign substance slipped upon was on the floor a sufficient length of time to impute constructive notice to the defendant, or (b) that the defendant had actual notice of the substance’s presence on the floor, or (c) that the defendant was delinquent in not discovering and removing the foreign substance. In the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors. S.H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171 (1957).’
“394 So.2d at 50. In the context of a motion for a summary judgment, the movant has the burden of proving such facts as would negate an essential element in the nonmovant’s claim or demonstrating that the nonmovant does not have sufficient evidence to support an essential element of his or her claim. Ex parte General Motors, 769 So.2d 903, 909 (Ala. 1999).”
Wells Fargo cites Gasser Chair Co. v. Nordengreen, 991 N.E.2d 122 (Ind. Ct. App. 2013), a case in which a chair collapsed when a patron of a casino sat on the chair. The Indiana Court of Appeals affirmed a summary judgment in favor of the casino on the patron’s premises-liability claim because the patron had failed to demonstrate that the casino had actual or constructive knowledge that the chair was dangerous. 991 N.E.2d at 126-27. In the present case, Wells Fargo presented evidence indicating that there had been no incidences of any chairs collapsing at the particular Wells Fargo branch location before Smith’s incident. Additionally, both Smith and her mother testified in their depositions that they had not been aware of any chairs collapsing at the bank before the incident. Smith and her mother also testified that the bank manager had looked shocked and surprised when the chair collapsed beneath Smith. Thus, Wells Fargo presented evidence negating any inference that Wells Fargo was aware of any defect in the chair. Like in Nordengreen, Smith failed to present any evidence in response to Wells Fargo’s summary-judgment motion indicating that Wells Fargo had actual or constructive knowledge that the chair that collapsed and caused her injuries was dangerous.
Smith cites Winn-Dixie Montgomery, Inc. v. Weeks, 504 So.2d 1210 (Ala. 1987), *997 however, for the proposition that the collapse of the chair itself could lead to the inference that the chair was defective. In Weeks, a child that was riding in a shopping cart at a grocery store tried to reach candy that was in a display rack next to the checkout counter and, as he did so, the shopping cart tilted over and the child’s cheek was impaled on an allegedly broken wire that was sticking up on the candy rack. Id. at 1210. Our supreme court determined that the case had properly been submitted to the jury to determine whether the shopping cart and the candy rack were defective, despite the grocery store’s argument that there had been no evidence showing how long the alleged defect might have existed or that the grocery store had been aware, or should have been aware, of the defect. Id. at 1211. Specifically, our supreme court stated that “[t]he evidence in [Weeks] was susceptible of several inferences,” noting that “[o]ne inference that could be drawn by a jury was that the cart provided was defective, and that the defect caused it to collapse when a child tried to reach candy placed within a child’s reach at the check-out counter.” 504 So.2d at 1211.
Smith also cites Mims v. Jack’s Restaurant, 565 So.2d 609 (Ala. 1990), in which the patron of a restaurant injured herself after tripping on the metal threshold of a doorway. Our supreme court distinguished that ease from one in which a substance had caused a slick spot on a floor, observing that, when the defect or instrumentality is a part of the premises, like the cart or display rack in Weeks, and the instrumentality requires ordinary and reasonable maintenance in order to provide a safe premises for the store’s customers, the question whether the premises owner had constructive notice of the defect was for a jury to decide. 565 So.2d at 611. Smith asserts that Mims stands for the proposition that, “[i]f the chair [in the present case] is no longer able to do its job without collapsing, then there is substantial evidence by which a jury could reasonably conclude that Wells Fargo breached its duty to maintain the chair in a safe condition or to make sure-that the chair was safe before its employee instructed [Smith] to sit in the chair.”
In Mims, the patron of the restaurant had presented evidence in opposition to the restaurant’s summary-judgment motion indicating that some of the screws that moored the threshold of the doorway to the floor were missing and that the threshold was loose. 565 So.2d at 610. Our supreme court observed that that evidence, combined with the patron’s testimony that she had tripped on the threshold and that it had been the cause of the accident, amounted to substantial evidence from which a jury could find that a defect existed in the door’s threshold and that the defect had caused the patron to trip, causing her injuries. Id. Our supreme court further stated, in pertinent part, that
“in cases where the alleged defect is a part of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident.”
Id.
In Isbell v. Aztecas Mexican Grill, 78 So.3d 420 (Ala. Civ. App. 2011), the-patron of a restaurant filed a complaint against the restaurant after a booth in which the patron was sitting collapsed, causing him injuries. This court reversed the summary judgment that had been entered in favor of the restaurant, based on the holding in *998 Mims. 78 So.3d at 425. Specifically, this court stated that, given the holding in Mims, “we must agree with [the patron] that, because the booth seat that collapsed under him was a fixture or ‘a part of the premises,’ the issue whether [the restaurant] had actual or constructive notice of the alleged defect in the booth seat should ‘go to the jury, regardless [of the fact that [the patron] failed to make] a prima facie showing .that [the, restaurant] .had or should have-had. notice of the defect at the time of the accident.” Id.
In accordance with Mims, in which our supreme court categorized the cart or display rack in Weeks as “a part of the premises,” '565 So.2d at 611, we conclude that the chair in the present case, like the booth in Isbell, was also a part of the premises. In the present case, Smith included in her complaint a claim for failure to maintain the premises in a safe condition. Thus, her claim for recovery falls within the premise of Isbell. In Burlington Coat Factory of Alabama, LLC v. Butler, 156 So.3d 963, 965 (Ala. Civ. App. 2014), a shopper was injured when metal brackets at a store came loose from the wall and fell, hitting her in the face. In distinguishing the circumstances in that' case from those in Isbell, this court stated, in pertinent part:
“Although Isbell appears to render a premises owner potentially liable for any accident resulting from what could be considered a defect in the premises without regard to whether the defect could possibly have been detected by the premises owner, and therefore to run counter 'to the long-standing principles of premises liability, including the principle that such liability is premised upon the superior knowledge of the premises owner of the conditions on the premises, we note that the opinion in Isbell does not indicate that the premises owner had argued that the booth that had collapsed was not defective. In contrast, as will be explained infra, in the present case [the store] argues that [the shopper] failed to produce substantial evidence indicating that the brackets were defective.”
156 So.3d at 969-70 n.4. As noted by this court, the store in Burlington argued that there did not exist substantial evidence indicating that the brackets were defective. 156 So.3d at 967.
In the present case, however, like in isbell, there is no indication in the record that Wells Fargo argued that the chair that collapsed and allegedly caused Smith’s injuries was not defective. Rather, in its summary-judgment motion, Wells Fargo argued that the chair was an open and obvious danger' and that Smith had failed to present any evidence indicating that Wells Fargo had actual or constructive knowledge of that danger. Because Wells Fargo’s position in its summary-judgment motion relied on the dangers of the chair, we conclude that, like in Isbell, the issue whether Wells Fargo had actual or constructive notice of the alleged defect in the chair should go to the jury, regardless of the fact that Smith failed to make a prima facie showing that the bank had or should have had notice of the defect at the time of the accident. Accordingly, we reverse the trial court’s judgment and remand the case for further proceedings. Because we are reversing the summary judgment for the reasons stated herein, we decline to address Smith’s final argument on appeal regarding whether the trial court erred in failing to strike from the record the evi-dentiary submissions submitted on February 29, 2016, by Wells Fargo in support of its summary-judgment motion.
REVERSED AND REMANDED.
*999 Thompson, P.J., and Thomas and Donaldson, JJ., concur.
Pittman, J., recuses himself.